**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4173

MOHAMMAD SARIHIFARD,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-96-332)

Argued: April 9, 1998

Decided: August 19, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and CHAMBERS, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Chambers wrote the opinion,
in which Chief Judge Wilkinson and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appel-
lant. Gordon Dean Kromberg, Assistant United States Attorney, Alex-
andria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

CHAMBERS, District Judge:

I.

FACTS

Mohammad Sarihifard ("Petitioner") was convicted after a jury trial in the Eastern District of Virginia of perjury before a grand jury in violation of 18 U.S.C. § 1623(a) and making false statements to a government agency in violation of 18 U.S.C. § 1001. The trial judge sentenced Petitioner to twenty-one months in prison pursuant to the federal sentencing guidelines.

The charges against Petitioner initially stem from a conversation with federal agents where Petitioner provided the agents with inaccurate information. The federal agents were conducting an investigation into alleged money laundering and drug trafficking at Eagle Motors. Eagle Motors was a small used car dealership in Arlington, Virginia, owned by Ali Galadari ("Galadari"). Galadari was a target of the government's investigation. From 1994 to 1995, Petitioner, a close friend of Galadari, worked as a used car salesman for Eagle Motors. Petitioner apparently was not the primary target of the government's investigation. However, the agents were seeking information concerning Petitioner's purchase and resale of a new 1995 Nissan Pathfinder. According to the government, the 1995 Pathfinder was purchased in Petitioner's name and sold two weeks later. The government agents theorized that the Pathfinder represented the profits of a drug transaction and that Petitioner was simply a "straw" owner of the vehicle. In January 1996, Petitioner told the government agents that he purchased the Pathfinder for his own use and that he sold it to another buyer named Deborah Mills two weeks later for a profit of $1000.00. After Petitioner relayed his version of events, the agents called Petitioner a "liar." However, Petitioner adhered to his story. Petitioner told the same story to a grand jury later that month. Prior to his testimony before the grand jury, the United States Attorney apprized Petitioner of his rights under the Fifth Amendment to the United States Constitution. After Petitioner testified before the grand jury, the United States Attorney informed the grand jury that Petitioner had not pro-

2

vided truthful testimony. The United States Attorney instructed the grand jury to disregard Petitioner's testimony for the purposes of examining the possible illegal activity at Eagle Motors.

During the following months, the government intensified its investigation of Eagle Motors. In February 1996, Jockery Jones ("Jones"), a suspect in the money laundering scheme, testified under a grant of immunity that he was the actual purchaser of the Nissan Pathfinder. Later that month, Galadari entered into a plea agreement with the government where he agreed to cooperate with government agents. In July 1996, Galadari testified before the grand jury. Galadari told the grand jury that Petitioner was merely a straw owner of the vehicle. On July 17, 1996, Mahmoud Moshrefi ("Moshrefi"), Petitioner's roommate and a salesperson at Eagle Motors, also entered into a plea agreement with the government. Moshrefi testified before the grand jury that the sale of the Pathfinder was consummated in furtherance of a money laundering scheme and that Petitioner fulfilled a pivotal role in the scheme by acting as the straw owner of the vehicle. After Jones and the Eagle Motors' employees testified, the grand jury indicted Petitioner. He was charged with perjury before a grand jury and making false statements to government agents.

Petitioner's trial on the grand jury perjury and false statements charges commenced in October 1996. At trial, Moshrefi and Jones testified for the United States ("Respondent"). The two witnesses told the jury that Jones was the actual purchaser of the Nissan Pathfinder. They described a scheme where Eagle Motors' employees needed to account for $31,500 in cash so they asked Petitioner if he would agree to have his name listed as the purchaser of the Nissan. Petitioner agreed and received $1000.00 in cash as payment for his minor role in the scheme. In addition, Deborah Mills testified that Petitioner never sold her a Nissan Pathfinder, that she never purchased a Nissan Pathfinder and that she never even visited Eagle Motors. Moshrefi and Galadari also testified that Petitioner never purchased, borrowed, possessed or drove the Pathfinder that was actually sold to Jones. The transcript of Petitioner's January 1996 testimony before the grand jury was introduced into evidence. On October 29, 1996, Petitioner was convicted of the charges as contained in the indictment.

On January 17, 1997, Petitioner asked the trial judge to unseal information that had not been provided to the defense during the trial.

3

Petitioner asserted that the sealed information contained potentially exculpatory information that Respondent failed to make available to the defense in violation of the principles announced in Brady v. Maryland, 373 U.S. 83 (1963). The trial judge agreed to conduct an in camera inspection of the sealed information. After her inspection, the trial judge granted Petitioner's motion in regard to some of the sealed evidence and denied the motion as to the remainder of the protected material. The newly unsealed evidence revealed that, after Petitioner testified before the grand jury, the United States Attorney told the grand jury to disregard Petitioner's testimony because it was false. Petitioner maintains that the revelation of the prosecutor's statements to the grand jury raises questions regarding materiality and perjury entrapment. Petitioner also asserts that he was prejudiced by not having this information during the trial. The absence of the uncovered information, Petitioner argues, prevented him from presenting a defense of materiality or perjury entrapment to the jury.

II.

DISCUSSION

On appeal, Petitioner presents four issues. First, Petitioner argues that his false statements before the grand jury were not material because the grand jury was told to disregard them and, therefore, they did not influence the substance of the grand jury's decision. Second, Petitioner argues that the government knew that he was going to provide false testimony before the grand jury; yet, the government "coaxed" him into testifying. Petitioner insists that such an act constitutes perjury entrapment. Third, Petitioner asserts that the trial judge erred when she instructed the jury that it had to agree unanimously on only one instance of perjury and one instance of false statements in order to find Petitioner guilty of the crimes charged in the indictment. Finally, Petitioner accuses the government of failing to release exculpatory evidence, which he claims he could have utilized at his trial. In regard to the exculpatory evidence, Petitioner contends that the remaining information should be unsealed because it involves the criminal activity of two of the testifying witnesses. Petitioner argues that there is no reason to keep this information under seal because the government has concluded its investigation.

4

A. <u>MATERIALITY</u>

Perjury involves the false testimony under oath regarding a material matter where the witness has a willful intent to deceive the fact finder. <u>See United States v. Stotts</u>, 113 F.3d 493, 497 (4th Cir. 1997). A defendant is not guilty of perjury if the false testimony resulted from confusion or mistake. <u>See United States v. Dunnigan</u>, 507 U.S. 87, 94 (1993); <u>United States v. Smith</u>, 62 F.3d 641, 646 (4th Cir. 1995).

A defendant is guilty of grand jury perjury when the government proves: (1) that the defendant gave false testimony to the grand jury under oath; (2) that the testimony was false; (3) that the false testimony was given knowingly; and (4) that the subject matter of the testimony was material to the grand jury's investigation. <u>United States v. Friedhaber</u>, 856 F.2d 640, 642 (4th Cir. 1988) (en banc); <u>see also</u> 18 U.S.C. § 1623(a).

A person is guilty of making false statements to a government agency when the government proves: (1) that the defendant made a false statement to a governmental agency or concealed a fact from it or used a false document knowing it to be false; (2) the defendant acted knowingly or willfully; and (3) the false statement or concealed fact or false document was material to a matter within the jurisdiction of the agency. <u>United States v. Arch Trading Co.</u>, 987 F.2d 1087, 1095 (4th Cir. 1993). <u>See also</u> 18 U.S.C. § 1001.

An essential element in both grand jury perjury and the crime of making false statements is materiality. <u>See United States v. Gaudin</u>, 515 U.S. 506 (1995). "A statement is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." <u>United States v. Littleton</u>, 76 F.3d 614, 618 (4th Cir. 1996). It is irrelevant whether the false statement actually influenced or affected the decision-making process of the agency or fact finding body. <u>Arch Trading Co.</u>, 987 F.2d at 1095; <u>Friedhaber</u>, 856 F.2d at 642. As materiality is an essential element of both perjury and making false statements, a defendant is entitled to have a jury decide the question of whether a false statement was capable of influencing the decision-making body. <u>Littleton</u>, 76 F.3d at 617. In fact, a defendant cannot be convicted of perjury or making a false

5

statement unless the government proves beyond a reasonable doubt that the false statement was capable of influencing the decision-making body to which it was addressed. Id. Again, the jury is the ultimate arbiter of whether the government has met its burden of proof. Id. Petitioner contends that his false statement to the grand jury was not material because it did not actually influence the decision of the grand jury. Petitioner notes that after he testified before the grand jury, the government told the grand jury to disregard Petitioner's testimony because it was false. Respondent concedes that Petitioner's testimony did not influence the grand jury's decision. However, Respondent argues that Petitioner's false testimony did impede the grand jury's investigation. Petitioner replies that, at trial, the jury was instructed as to whether the false testimony influenced the grand jury's decision, not its investigation. This is an irrelevant and inaccurate distinction.

It is well established law in this Circuit that a finding of materiality is not dependant upon whether the fact finder was actually influenced by a defendant's false statements. See Friedhaber, 856 F.2d at 642. Rather, a false statement is material if it is capable of influencing the fact finder's determinations. Id. A false statement's capacity to influence the fact finder must be measured at the point in time that the statement was uttered. See United States v. Holly, 942 F.2d 916, 923 (5th Cir. 1991). In the instant case, Petitioner told the grand jury that he purchased the Nissan Pathfinder and sold it to Deborah Mills for a $1000.00 profit. The Petitioner did not reveal that he was a straw owner and that he never actually purchased the automobile. If Petitioner's false statements were believed by the grand jury, they might have led the grand jury not to indict certain members of Eagle Motors for money laundering. The fact that the government told the grand jury not to rely on Petitioner's testimony after he testified is irrelevant. It matters only that at the time Petitioner testified, he provided the grand jury with information that might have influenced their decision. As Petitioner's information was capable of influencing the outcome of the grand jury's investigation at the time that he testified, the materiality element of perjury is satisfied.

Petitioner argues that his statements were not material because the United States Attorney recognized instantly that Petitioner's testimony was false. Accordingly, Petitioner asserts that his statements

6

never had the capacity to influence the grand jury's decision. Petitioner's assertion creates a perverse incentive.

Adopting Petitioner's rationale might allow witnesses who lie under oath to escape prosecution if their statements before a grand jury are obviously false. This rationale protects witnesses who fabricate testimony that a grand jury will recognize instantly as false. An argument for the creation of such an incentive not only misconstrues the scope of materiality, it strains logic.

Materiality is not dependent upon the believability of a false statement. Rather, a statement is material if it is capable of influencing a function within the grand jury's jurisdiction. See Brown v. United States, 245 F.2d 549, 554 (8th Cir. 1957). A grand jury's decision to disregard a witness's testimony does not necessarily indicate that the testimony did not have the capacity to influence the grand jury. On the contrary, even if a grand jury disregards a witness's false testimony, the false testimony may impede the grand jury's capacity to attain an accurate and prompt resolution of the matter under consideration. See United States v. Dickerson, 114 F.3d 464, 466-67 (4th Cir. 1997).

The instant case is a paradigmatic example of how a discarded false statement still may alter the outcome of a grand jury proceeding. When Petitioner testified, the grand jury was investigating an alleged money laundering and drug trafficking conspiracy involving Eagle Motors' employees. Petitioner had direct knowledge concerning a facet of the conspiracy. Petitioner's false testimony jeopardized the accuracy of the grand jury's determinations and delayed the indictment of the Eagle Motors' conspirators. Despite the grand jury's decision not to rely on Petitioner's testimony, the false statements did affect the outcome of the proceedings.*

Of course, Petitioner could have exercised his Fifth Amendment right against self-incrimination. The Court acknowledges that Petitioner's decision not to answer the grand jury's questions also might

_____

*The capacity of Petitioner's statements to impede an essential function of the grand jury was argued by Respondent at trial and included within the trial judge's final charge to the jury.

7

have delayed the proceedings and deprived the grand jury of valuable information. However, in such a case, Petitioner would have been acting pursuant to a constitutionally vested right. Petitioner had no right to provide false testimony under oath. It is a stalwart principle of American jurisprudence that testifying witnesses have two permissible choices. They can provide truthful testimony or they can invoke the protections of the Fifth Amendment. See Bryson v. United States, 396 U.S. 64, 72 (1969) (footnote omitted). False testimony is not a permissible option. Id.

B. PERJURY ENTRAPMENT

Entrapment occurs when (1) the government induces a person to commit a crime and (2) the person induced had no predisposition to engage in the criminal act. Mathews v. United States, 485 U.S. 58, 63 (1988). In order to establish inducement, a defendant must show that the government acted in an excessive manner that would prompt a reasonably firm person to commit a crime. See United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970). If the defendant establishes a prima facie case of inducement, the government then must show that the defendant's decision to commit the crime was the product of his own disposition that did not originate from government persuasion. See United States v. Osborne, 935 F.2d 32, 38 (4th Cir. 1991). A defendant is entitled to an entrapment defense whenever there is sufficient evidence from which a reasonable jury could find entrapment. Mathews, 485 U.S. at 62.

Perjury entrapment occurs when a government agent coaxes a defendant to testify under oath for the sole purpose of eliciting perjury. See United States v. Shuck, 895 F.2d 962, 966 (4th Cir. 1990); Brown, 245 F.2d at 555. In the instant case, Petitioner argues that he is a victim of perjury entrapment because the government was aware of his prior false statements to the agents. Petitioner asserts that the government coaxed him into testifying before the grand jury for the sole purpose of eliciting perjury. This argument is unpersuasive.

Entrapment is an affirmative defense. United States v. Blevins, 960 F.2d 1252, 1257 (4th Cir. 1992). Hence, the Petitioner must demonstrate that the government induced him to commit a crime. See Osborne, 935 F.3d at 38. Based upon the information presented by the

8

Petitioner, the Court concludes that there is no evidence suggesting that the government's purpose in questioning the defendant was the solicitation of perjured testimony. See Shuck , 895 F.2d at 966. At the time that Petitioner testified before the grand jury, the government was conducting an investigation into possible money laundering at Eagle Motors. Petitioner's testimony was a source of possible evidence into several individuals' involvement in criminal activity. The government did suspect that Petitioner provided false statements to the government agents in a prior interview. However, this does not mean that the government did not have a valid purpose in eliciting Petitioner's testimony before the grand jury. It also does not show that the government knew Petitioner would testify falsely before the grand jury. Prior to his grand jury testimony, Petitioner knew that the government agents did not believe his statements. Moreover, Petitioner was provided with Fifth Amendment warnings before he testified. He was explicitly told that he could refuse to answer any question on the ground that it might incriminate him. Arguably, Petitioner's prior false statements provided the government with notice that he might testify falsely before the grand jury. However, this falls far short of proving that the government asked him to testify for the purpose of eliciting perjury. When the government has a legitimate reason for asking a witness to testify before the grand jury and the witness is provided with adequate warnings, the mere fact that the government knows that the witness possibly may provide false testimony does not establish the requisite showing of inducement. See United States v. Vesich, 724 F.2d 451, 460-61 (5th Cir. 1984). Absent sufficient evidence that the government asked defendant to testify for the purpose of eliciting perjury, the defense of perjury entrapment must fail. See Shuck, 895 F.2d at 966.

C. ALLEGED BRADY VIOLATIONS:
WITHHOLDING EXCULPATORY EVIDENCE

Prosecutorial withholding of exculpatory evidence violates due process irrespective of whether the government did or did not act in good faith. Brady v. Maryland, 373 U.S. 83, 87 (1963). In order to prove a Brady violation, a defendant must show that the undisclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); Maynard v. Dixon, 943 F.2d

9

407, 417 (4th Cir. 1991). Evidence is material if there is a reasonable probability that its disclosure would have produced a different outcome. United States v. Kelly, 35 F.3d 929, 936 (4th Cir. 1994).

Petitioner in the instant action argues that the government failed to disclose the United States Attorney's statements regarding Petitioner's false testimony. Specifically, shortly after Petitioner testified in the grand jury proceeding, the United States Attorney told the members of the grand jury to disregard Petitioner's testimony because it was false. Petitioner argues that withholding this information prevented him from presenting his materiality and perjury entrapment defenses to a jury. The threshold question for this Court on appeal is not whether Petitioner was prevented from presenting his materiality and perjury entrapment defenses to the jury; rather, the proper question is whether the government withheld evidence that probably would have affected the outcome of Petitioner's trial. The Court, however, already has found that Petitioner's materiality and perjury entrapment arguments are meritless. Accordingly, evidence supporting those theories cannot be material. Failure to meet the materiality prong of the Moore test precludes this Court from finding a Brady violation.

Petitioner also claims that the government withheld exculpatory evidence by failing to unseal an affidavit containing the names of confidential informants who accused certain Eagle Motors' employees of engaging in criminal activity. Because many of the Eagle Motors' employees named in the affidavit also testified against Petitioner at trial, Petitioner alleges that the affidavit was essential for proper impeachment of the witnesses' credibility. The decision to seal and unseal evidence is committed to the sound discretion of the trial judge. See Baltimore Sun Co. v. Goetz, 886 F.2d 60, 65 (4th Cir. 1989). An appeals court may disturb a trial judge's decision to seal or unseal a warrant only if the trial judge abused her discretion. Id. In this case, the trial judge conducted a post trial in camera inspection of the evidence. She determined that the evidence did not contain exculpatory evidence, that petitioner was not prejudiced by the unavailability of this evidence, and that the release of the sealed information might have jeopardized the identity of certain confidential informants and the government's investigation. Respondent points out that Petitioner did cross-examine the government's witnesses and

10

impeached them specifically on the fact that they were testifying pursuant to a plea agreement. The trial judge found that the information contained in the affidavit would not produce a different outcome for Petitioner; however, it might have prejudiced the government's efforts. This Court finds no evidence that in any way disputes her findings or supports a conclusion that the trial judge abused her discretion. Hence, Petitioner's Brady argument regarding the affidavit also must fail.

### D. PROPRIETY OF THE JURY INSTRUCTIONS

Conviction of an offense requires a finding of guilt beyond a reasonable doubt as to each and every element of the offense charged in the indictment. See Sullivan v. Louisiana, 508 U.S. 275, 277 (1993). In cases where a defendant is tried before a jury, the Sixth Amendment guarantees that the jury's findings of guilt be unanimous. Id.

Petitioner in this action alleges that the jury charge violated his Sixth Amendment rights by not requiring a unanimous finding of guilt as to each instance of conduct alleged in the indictment. The indictment charged Petitioner with one count of perjury and one count of making false statements to a government agency. Contained within the one count of perjury were multiple instances where the defendant supposedly committed perjury before the grand jury. Contained within the one count of false statements were multiple instances where the defendant supposedly supplied materially false statements to agents of the federal government. In her charge to the jury, the trial judge listed the elements of perjury and false statements. She instructed the members of the jury that in order to convict the defendant of perjury, they must unanimously find that the government proved each and every element of the crime of perjury beyond a reasonable doubt. She followed an identical procedure for the charge of making false statements. However, the trial judge also instructed the jury that it did not have to agree unanimously as to each and every instance of false conduct contained in the indictment. Rather, she charged that the jury needed only to find unanimously that the government proved one instance of conduct to adjudge Petitioner guilty of perjury. She presented identical language regarding the false statements charge. Petitioner contends that this instruction derogated his

11

Sixth Amendment right to have the jury unanimously find him guilty of each and every element of the offense beyond a reasonable doubt.

Petitioner's assertion confuses elements of an offense with instances of conduct. A jury is required to find that the government proved every element of each separate offense beyond a reasonable doubt before adjudging a person guilty of an offense. Id. A jury is not necessarily required to agree unanimously on every instance of conduct charged in an indictment. United States v. Tipton, 90 F.3d 861, 885 (4th Cir. 1996), cert. denied, #6D6D 6D# U.S. ___, 117 S. Ct. 2414 (1997). Rather, when an indictment charges multiple instances of conduct listed in the conjunctive, a jury verdict of guilty will stand if the jurors unanimously agree as to only one of the instances of conduct alleged in the indictment. See Turner v. United States, 396 U.S. 398, 420 (1970); United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989). Often, a trial judge will have to provide a special unanimity instruction in order to prevent confusion. For example, in United States v. Holly, 942 F.2d 916, 929 (5th Cir. 1991), the Fifth Circuit reversed a perjury conviction after the trial judge failed to instruct a jury that each member must agree unanimously on at least one instance of conduct in order to judge the defendant guilty. The Fifth Circuit held that the failure to mention unanimity as to one instance of conduct may lead the jury to conclude that each member simply had to find individually that the defendant committed one of the acts alleged in the indictment. Id. However, Holly is not applicable in this case because the trial judge did instruct the jury that each member had to agree unanimously on one of the instances of conduct before adjudging Petitioner guilty of the offenses charged in the indictment. Consistent with this Court's prior holding in Tipton, such an instruction removes confusion and allows the jury to make a finding of guilt in accordance with the Sixth Amendment. Tipton , 90 F.3d at 885; see also United States v. Hixon, 987 F.2d 1261, 1265 (6th Cir. 1993). Therefore, the Court finds no error in the trial judge's jury charge.

III.

CONCLUSION

For the foregoing reasons, the judgment of conviction is affirmed.

12

AFFIRMED

13