UNITED STATES of America,
Plaintiff,

v.

Jorge Luis GONZALEZ, Alkibiades Dodge, and Waell Majed Farraj, Defendants.

Case No. 1:10–CR–20075.

United States District Court, S.D. Florida.

June 10, 2010.

Richard A. Sharpstein, Esq., Ari H. Gerstin, Esq., Jorden Burt LLP, Miami, FL, for Defendant Waell Farraj.

Douglas Cole Hartman, Esq., Hartman and Cornely, P.A., Miami, FL, for Defendant Jorge Luis Gonzalez.

C. Michael Cornely, Esq., Hartman and Cornely, P.A., Miami, FL, for Defendant Alkibiades Dodge.

Karen E. Gilbert, Esq., Michael Patrick Sullivan, United States Attorney's Office, Miami, FL, for the United States.

## ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF FEDERAL DISTRICT COURT JUDGE CECILIA ALTONAGA

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion *in Limine* to Exclude the Testimony of Federal District Court Judge Cecilia Altonaga (DE 53), filed on May 26, 2010. The United States filed a Response (DE 56), to which Defendants replied (DE 58). The Court has reviewed the pertinent parts of the record and is otherwise advised in the premises.

## I. Background

Counts Four and Five of the Indictment charge Defendant Gonzalez with perjury committed in the suppression hearing presided over by Judge Altonaga on September 29, 2009, in violation of Title 18, U.S.C. § 1623(a)[1]. (DE 1 at 5–8.) Count Six charges Defendant Farraj with perjury

also committed in that hearing. (DE 1 at 8–11.) All three Defendants are charged in Count One with conspiracy to commit offenses against the United States which, *inter alia,* include perjury.

In a letter dated April 26, 2010, Assistant United States Attorney Karen Gilbert ("Gilbert") wrote to Defendant Farraj's and Defendant Gonzalez's counsel that "[I]n regard to the 'material' element of the perjury count, I would like to discuss whether we can agree on a stipulation or whether I will need to call Judge Alt[o]naga as a trial witness." (DE 53–1.)

### A. Defendants' Motion *in Limine* (DE 53)

Defendants argue that allowing the Government to call Judge Altonaga to testify at the upcoming trial would be improper and highly prejudicial to the Defendants because: (1) any probative value of her testimony is far outweighed by the substantial risk of unfair prejudice to the Defendants under Rule 403 of the Federal Rules of Evidence; (2) the Court should not allow Judge Altonaga to testify as to her mental processes in reaching a judicial decision; and (3) the material element of the perjury counts is governed by an objective, not subjective standard of proof. (DE 53 at 3.)

According to Defendants, because the test for materiality is an objective standard, and a finding of materiality is not dependent upon whether the fact-finder was *actually* influenced by a defendant's

---

**1.** Under 18 U.S.C. § 1623(a), "Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both."

false statements, any probative value of Judge Altonaga's subjective opinion testimony is *de minimis*, and substantially outweighed by the risk of unfair prejudice to the Defendants. (DE 53 at 3–4.) Defendants also argue that any testimony by Judge Altonaga directed to the objective materiality of the statement at issue would be an improper legal conclusion invading the jury's province. (DE 53 at 5.)

In regards to the substantial risk of unfair prejudice to the Defendants, Defendants argue that various courts have recognized that allowing a judge to testify may result in unfair prejudice to the opposing party. (DE 53 at 6.) "If Judge Altonaga is allowed to testify, it will appear to the jury that her Honor is throwing the weight of her judicial authority behind the Government.... Judge Altonaga's testimony will essentially communicate to the jury that a federal court judge, with impeccable credibility, believes that the Defendants are liars." (DE 53 at 6.)

## B. Government's Response (DE 56)

The Government responds that the Defendants' grounds for prohibiting Judge Altonaga from appearing as the Government's witness "are too flimsy to support the imposition of the extreme remedy of the exclusion of probative evidence from a witness to the alleged crimes of the defendants." (DE 56 at 2.) According to the Government, Judge Altonaga's proposed testimony on behalf of the Government is directed at proof of an essential element of the crime of perjury: materiality. (DE 56 at 2.) "While it is true that the Government can often call a witness other than a judge to prove materiality, that fact does

not require that that be the only source of such testimony." (DE 56 at 3. (internal citations omitted)) The Government asserts that Judge Altonaga's testimony is relevant to the issue of materiality of the Defendants' alleged false statements.

Judge Altonaga was and is in the best position of all the persons who were in her courtroom for the suppression hearing on 9/29/09 to testify regarding whether the false statements were capable of influencing her decision on the issue before her.... She, better than anyone else, is the best source for testimony about whether the alleged false testimony of the defendants was capable, and/or did, influence her in her consideration of the suppression issues before her.[2] (DE 56 at 5–6.) Judge Altonaga's testimony represents "the most natural means" of establishing the crucial facts as to materiality. (DE 56 at 6.)

According to the Government, the Defendants' argument about Judge Altonaga's prestige lacks merit: the same argument could be made about a federal prosecutor or a federal grand juror who testifies against a defendant in a criminal case, and courts have previously admitted such testimony despite the defendant's objections. (DE 56 at 3–5.) Furthermore, the Government asserts that there is "no possibility" that Judge Altonaga's proposed testimony will excite the jury to reach a guilty verdict based upon any improper factor, such that there is no danger of unfair prejudice under Rule 403. (DE 56 at 7.)

Finally, the Government argues that the rule that a judge may not be asked to

---

**2.** The Government notes that it will not ask Judge Altonaga to comment on the actual falsity of any of the Defendants' sworn testimony. (DE 56 at 7 n. 2.)

testify about her mental processes in reaching a judicial decision is inapplicable here because Judge Altonaga never entered any decision on the issues before her in the suppression hearing.[3] (DE 56 at 8.)

## C. Defendants' Reply (DE 58)

Defendants reply that the Rule 403 analysis requires no further argument: allowing Judge Altonaga to testify would confuse the jurors and give the Government an unfair advantage at trial. (DE 58 at 2.) "The Government has sufficient, numerous, and ample ways to prove materiality in this case. To allow them to call a Federal Judge would tip the scales of justice so far in the favor of the Government as to deny the Defendants Constitutional Due Process and a fair trial in this case."[4] (DE 58 at 6.) According to Defendants, Judge Altonaga's testimony that she could have been influenced by the testimony of Defendants is not only clearly outweighed by the fundamental prejudice of having a United States District Court Judge testify before a jury, it is also "questionably relevant." (DE 58 at 4.)

Furthermore, Judge Altonaga's testimony is not as a witness to a crime but instead constitutes a legal opinion, notwithstanding any instruction to the contrary presented to the jury by this Court. (DE 58 at 2.)

## II. Analysis

### A. Legal Standard

■ In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds. *In re Seroquel Prods. Liab. Litig.*, 2009 WL 260989, at *1 (M.D.Fla. Feb. 4, 2009) (internal citations omitted). The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Id.* (internal citations omitted). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citation omitted).

■ Denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context. *Id.* (internal citation omitted). Denial also does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. *Id.*

■ At trial, the court may alter its ruling based on developments at trial or on its sound judicial discretion. *Id.*

### B. The Materiality Element of Perjury

■ A statement under oath constitutes perjury if it is false, known to be so and *material* to the proceeding. 18 U.S.C. § 1623. The test for materiality, an essen-

---

3. In the underlying case, Judge Altonaga denied as moot Pedro Luis Marte's Motion to Suppress upon the Government's voluntary dismissal of the Indictment, "for reasons which are evident from the transcript of the hearing." (DE 46 in 09–cr–20689–CMA.)

4. According to Defendants, the Government can argue, from the testimony of witnesses and circumstantial evidence to be presented in this Case, that the alleged false testimony of the Defendants did or could have influ-

enced the proceedings in Court, as alleged in the Indictment. (DE 58 at 3.) Defendants add that they have stipulated to the introduction of the Transcript of the testimony of the Defendants at the Motion to Suppress hearing on September 29, 2009, before Judge Altonaga. (DE 58 at 3.) Therefore, it is not necessary to have Judge Altonaga identify or describe the proceedings, the purpose of the Motion, or the official nature and purpose of the Defendants' testimony. (DE 58 at 4.)

tial element of perjury, is objective.[5] *United States v. Pagan–Santini*, 451 F.3d 258, 266 (1st Cir.2006) (internal citation omitted). "A statement is material if it has a natural tendency to influence, or is capable of influencing the decisionmaking body to which it was addressed. It is irrelevant whether the false statement actually influenced or affected the decisionmaking process of the agency or fact finding body." *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir.1998) (internal citations and quotations omitted). A false statement's capacity to influence the fact finder must be measured at the point in time that the statement was uttered. *Id.* at 307. Materiality is not dependent upon the believability of a false statement. *Id.*

In *United States v. Savoy*, the indictment was based on alleged false statements contained in a declaration submitted to the federal district court in Maryland in connection with a pre-trial discovery matter in a case supervised by Chief Judge Motz. 38 F.Supp.2d 406, 408 (D.Md.1998). The defendant asked that the entire district court of Maryland recuse itself from hearing the cause because of the possibility that Chief Judge Motz might be called to testify. *Id.* at 415. According to the court,

> Even if that were likely, it is the jury and not the trial judge who would evaluate the credibility of Judge Motz's testimony. In light of the objective nature of the definition of materiality, however, there is virtually no likelihood that the testimony of Judge Motz will be required.... What Judge Motz 'thought and why he did what he did,' are not issues in this case.

*Id.* The court denied the recusal motion because the defendant showed no reasonable basis to question the impartiality of any district judge in Maryland. *Id.*

In *United States v. Vitrano*, the defendant was charged with making a material false declaration to the court contrary to 18 U.S.C. § 1623(a) by claiming that his friend located his discharge certificate, which the Government believed to be a fake. 2010 WL 1905021, at *2 (E.D.Wis. May 10, 2010). The defendant contended that only the judge to whom the statement at issue was made could testify as to its materiality; the Government argued that the judge's testimony was unnecessary because the standard for materiality is objective. *Id.* The Government preferred that the judge in the instant case instruct the jury that, as a matter of law, the discharge certificate, if accepted as genuine, would have the effect of reducing the defendant's sentence from thirty years to no more than ten. *Id.* The judge provided the jury with an appropriate instruction as to the legal effect of the discharge certificate, thus permitting the jury to perform its task of determining whether the government has proven the materiality element of the offense at issue. *Id.* at *4. According to the *Vitrano* court, materiality may be proven in a variety of ways, and while the prosecutor "may choose to call the recipient of the alleged false or fraudulent statement in order to demonstrate materiality, courts have not required that." *Id.* at *3.[6]

### C. Rule 403 of the Federal Rules of Evidence

 Under Rule 403 of the Federal Rules of Evidence, "Although relevant, evi-

---

**5.** Because materiality is an essential element of perjury, the jury is the ultimate arbiter of whether the government has met its burden of proof on this element. *United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir.1998).

**6.** According to the *Vitrano* court, the Defendant cited no case (and the court could not find one) holding that testimony from the particular judge to whom the statement was

dence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 establishes a presumption in favor of the admissibility of relevant evidence by making relevant evidence excludable only if its probative value is substantially outweighed by the enumerated competing considerations. *See, e.g., United States v. Seals,* 419 F.3d 600, 612 (7th Cir.2005) (Posner, J., concurring). While the trial judge has broad discretion to admit relevant evidence, the judge's discretion to exclude evidence under Rule 403 is narrowly circumscribed. *See, e.g., United States v. Simpson,* 910 F.2d 154, 157 (4th Cir.1990) (stating that there is a strong preference for admitting probative evidence); *United States v. Norton,* 867 F.2d 1354, 1361 (11th Cir.1989) ("Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.") (internal citations omitted). *But see Cauchon v. U.S.,* 824 F.2d 908, 913–14 (11th Cir.1987) ("[U]nder Federal Rule of Evidence 401, the trial court is granted broad discretion both on determining the relevance of the evidence to be admitted and in determining whether the probative value of such evidence outweighs any inherent prejudice to the defendant.") (internal citation omitted).

■ While relevant evidence is inherently prejudicial, Rule 403 focuses on *unfair* prejudice. *Cauchon,* 824 F.2d at 914 (internal citations omitted). Accordingly,

"Unfair prejudice cannot be simplistically defined as evidence having adverse effects on a party's case; rather it is an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (internal quotations and citations omitted). *See also Mullen v. Princess Anne Volunteer Fire Co., Inc.,* 853 F.2d 1130, 1134 (4th Cir. 1988) (stating that unfair prejudice concerns "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it.") (internal citations omitted); *United States v. Saintil,* 753 F.2d 984, 989 n. 7 (11th Cir.1985) (noting that under Rule 403, prejudice "relates to the likelihood of inciting the jury to an irrational decision based on an improper basis.")

Courts have refused to allow a judge to testify in a subsequent proceeding as to the mental processes which he performed in deciding a case for several reasons, including unfair prejudice to the opposing party.[7] *See, e.g., Georgou v. Fritzshall,* 1995 WL 248002, at *3–4 (N.D.Ill. Apr. 26, 1995) ("There is a substantial risk that a jury will give too much credence to the testimony of a judge. A judge's testimony is likely to bear additional weight in the mind of jurors because of his position and authority, and because it automatically bears the imprimatur of character, credibility and reliability emanating from the judge's position rather than the quality or veracity of his testimony. A judge who testifies as an expert witness for a private litigant provides more than evidence; the judge also confers the prestige

addressed was *necessary* to find materiality under § 1623 or any similar statute.

7. The other reasons cited by the *Georgou* court are: the difficulty inherent in accurately

re-creating a mental process, the appearance of impropriety generated by a testifying judge and the solemnity of the record of a decision.

and credibility of judicial office to the litigant's position. Forcing an opposing party to contend with the substance of a witness's testimony as well as the additional measure of credibility that a judge is likely to inspire merely due to his position places a heavy burden on the party opposing the judge's testimony. Additionally, it is practically impossible for a party to challenge the mental impressions of a judge, as his thought process is known to him alone.") (internal citations and quotations omitted).

However, in *United States v. Johnson,* the Sixth Circuit found that the district court did not abuse its discretion in holding that the probative value of a judge's testimony in a perjury case was not substantially outweighed by the danger of unfair prejudice. 25 Fed.Appx. 231, 239 (6th Cir.2001) (noting that the discretion in determining the proper balance under Rule 403 is interpreted broadly). In *Johnson,* the defendant was convicted of perjury; his alleged false statements were made in an affidavit submitted in response to a summary judgment motion in a civil proceeding. *Id.* at 232. That civil proceeding was assigned to Judge Jarvis, who, based on the affidavit, concluded that there were genuine issues of material fact and denied the motion. *Id.* at 234. A motion *in limine* was filed seeking to exclude the proposed testimony of Judge Jarvis; the district court denied the motion and held that the Judge could testify that the defendant's statements influenced his decision in

the case or were capable of doing so. *Id.* However, he was not allowed to testify as an expert witness as to his opinion about whether the alleged false statements were material. *Id.* At the perjury trial, Judge Jarvis testified that the submitted affidavit was determinative of the summary judgment motion. *Id.* at 235. Following the judge's testimony, the district court cautioned the jury that it should consider the judge's testimony as it would consider the testimony of any other witness in the case, and that he testified about facts, not the applicable law. *Id.* On appeal, the Sixth Circuit found that absent a stipulation by the defendant on materiality, "testimony by Judge Jarvis represented the most natural means of establishing the crucial facts as to materiality. Mindful of the fact that the district court gave the jury an appropriate cautionary instruction, thereby minimizing any potential prejudice, we conclude that there was no abuse of discretion here." *Id.* at 239. The Chief Judge dissented, stating that he would reverse the judgment of the district court because, *inter alia,* he believed that court erred in allowing Judge Jarvis to testify. *Id.* According to the Chief Judge, Judge Jarvis' testimony improperly "invaded the jury's fact-finding function and unduly prejudiced the proceeding.... [T]he fact that he is a federal judge gives his testimony almost total credibility and severely undercuts the position of the defendant." [8] *Id.* at 241.

Additionally, in *United States v. Conley,* where the defendant was charged with

---

**8.** The Chief Judge also stated that "Judge Jarvis's testimony went beyond demonstrating that Johnson's affidavit had 'a natural tendency' to influence and addressed the actual materiality and falsity of his statements As Judge Jarvis explained, the affidavits 'decided the issue of whether or not there was a question of fact.' Thus, Judge Jarvis's testimony did not merely address the tendency or capability

of Johnson's affidavit to influence him; such testimony would have preserved the question of whether Johnson's statements were material for the jury. Rather Judge Jarvis's testimony that Johnson's affidavit was 'determinative' communicated his conclusion to the jury—the statements in Johnson's affidavit were, in fact, material." *Id.* at 242.

perjury arising from his grand jury testimony, the First Circuit concluded that the district court acted well within its discretion in allowing the Government to call a grand juror to testify as to the scope and purpose of a grand jury investigation for the purpose of proving materiality. 186 F.3d 7, 14–17 (1st Cir.1999). In finding that the district court acted well within its discretion, the First Circuit noted that it would reverse a district court's judgment concerning the relative weighing of probative value and unfair effect only in extraordinarily compelling circumstances. *Id.* at 16. Accordingly,

> Although the district court did not make express findings with respect to its Rule 403 balancing, it is apparent from the record that the court was aware of its responsibility to balance the probative value of [the grand juror's] testimony against its unfairly prejudicial effect.... As the district court noted, the testimony of [the grand juror] was clearly relevant to materiality. [She] testified as to the scope and purpose of the grand jury inquiry.... [The grand juror's] testimony was probative in the sense that it provided a context for [the defendant's] allegedly false statements from which the jury could infer materiality. We next consider [defendant's] assertions of prejudicial effect. [Defendant] offers no evidence to support his theory that the petit jurors were improperly influenced by their sense of identity or 'camaraderie' with [the grand juror]. Absent such evidence, we cannot conclude that the mere possibility that some sort of bonding occurred between the petit jury and [the grand juror] substantially outweighs the probative value of [the grand juror's] testimony.

*Id.* at 16–17 (internal citation omitted).

### D. The Court's Decision

■■■ After conducting the requisite balancing under Rule 403 of the Federal Rules of Evidence, I find that Judge Altonaga's proposed testimony should be excluded: its attenuated probative value is substantially outweighed by the danger of unfair prejudice.

While the Government argues that Judge Altonaga is the best source of testimony about whether the alleged false testimony of the Defendants *influenced* her in her consideration of the suppression issues before her, that testimony is irrelevant in this Case because the test for materiality is objective. Furthermore, the testimony would be speculative because Judge Altonaga did not make a decision on the suppression motion. If she were to make a decision on that motion, her testimony would be improper for a host of other reasons. *See Georgou v. Fritzshall,* 1995 WL 248002 (N.D.Ill. Apr. 26, 1995).

While Judge Altonaga's testimony that the false statements were *capable of influencing* her is relevant, the Government can prove materiality in a variety of ways and does not require Judge Altonaga's testimony on the matter. For example, Defendants have stipulated to the introduction of the Transcript containing the Defendants' testimony at the suppression hearing that is the subject of the perjury charges.

There is a considerable danger of unfair prejudice because of the risk that the jury would give too much credence to Judge Altonaga's testimony due to her position and stature as a Federal District Court Judge.

### III. Conclusion

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion *in Limine* to Exclude

the Testimony of Federal District Court Judge Cecilia Altonaga (DE 53) is **GRANTED.**