RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0063P (6th Cir.)
File Name: 04a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 03-3496

RYAN E. LEE,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00024—Algenon L. Marbley, District Judge.

Submitted: December 4, 2003

Decided and Filed: February 27, 2004

Before: SILER and GILMAN, Circuit Judges; BUNNING,
District Judge.*

_____

*The Honorable David L. Bunning, United States District Judge for
the Eastern District of Kentucky, sitting by designation.

---

_____

### COUNSEL

**ON BRIEF:** Isabella Dixon-Thomas, Columbus, Ohio, for
Appellant. Kevin W. Kelley, UNITED STATES
ATTORNEY, Columbus, Ohio, for Appellee.

_____

### OPINION

_____

DAVID L. BUNNING, District Judge. This is a direct
criminal appeal from a perjury conviction pursuant to
18 U.S.C. §1623. Ryan Lee appeals his conviction on the
basis of: (1) insufficiency of the evidence; (2) the denial of a
motion to dismiss the indictment; (3) the court's evidentiary
rulings; and (4) the denial of his motion for judgment of
acquittal. The parties have agreed to waive oral argument,
and, upon examination, we agree that oral argument is not
needed. Fed. R. App. P. 34(a). For the following reasons, we
**AFFIRM**.

### BACKGROUND

The indictment against Lee arose from sworn testimony he
gave during his detention hearing before a federal magistrate
judge. In an effort to convince the judge that he was a good
candidate for pretrial release, Lee testified about his
employment. More specifically, Lee testified that he met
Jeffrey Bryant and decided to invest money in Bryant's
restaurant, Buckeye Fried Chicken ("Buckeye Chicken").
Lee testified that he worked at Buckeye Chicken and had a
50% interest in the business. Lee stated that he primarily
worked at Buckeye Chicken during the week, not during the
weekends; that he worked from approximately 6:30 a.m. to
about 11:00 a.m.; and that his duties included meeting
vendors and picking up supplies from Gordon Food Service.

Lee explained that he had one office at the restaurant, and Bryant had the other.

During cross-examination, Lee announced that he was refusing to answer any more questions. After consulting with Lee, Lee's attorney withdrew Lee's testimony. The magistrate judge indicated that he would strike Lee's testimony and not consider it in making his decision regarding Lee's bond.

After the detention hearing, the FBI investigated Lee's statements regarding his employment at Buckeye Chicken. The results of this investigation led to Lee being charged with one count of perjury in violation of 18 U.S.C. §1623. The Indictment charged:

> At the time and place alleged, the Court was engaged in a detention hearing to determine if there were appropriate conditions of release for defendant RYAN E. LEE. It was a matter material to said detention hearing to determine whether or not RYAN E. LEE had employment, specifically at Buckeye Chicken Restaurant, 1971 East Livingston Avenue, Columbus, Ohio.

> At the time and place alleged, RYAN E. LEE, while under oath, did knowingly declare in response to questions from his attorney before said Court with respect to the material matter alleged above, as follows:

> Q: "Do you go to work there every day, or where do, how often do you go to work?"

> A: "Well mostly just during the week, I'm not necessarily there during the weekend because we don't normally have vendors come through, usually I'm there in the mornings to have vendors come through, usually I'm there in the mornings to accept vendors in. We got chicken coming in, we got rolls

> coming in, we got uhmm, then I go over to GFS which is the Gordon Food Services and pick up supplies and different things like that and drop them off. So I'm usually in there between 6:30 and I'm out of there by about 11:00 when we open."

> Q: "If released on some sort of bond would you continue to work there?"

> A: "Yes, sir."

Lee filed a motion to dismiss the indictment, arguing that the magistrate's decision to strike Lee's testimony made his testimony a "legal nullity." The district court denied Lee's motion to dismiss the indictment on that basis.

At trial, the United States called six witnesses. Bryant testified that Lee never worked at Buckeye Chicken, had no role in the day-to-day operations, and had no responsibilities at Buckeye Chicken. Bryant also testified that Lee never had an office at Buckeye Chicken and was never given a key to the restaurant. Bryant acknowledged that Lee had lent him $33,000, and that he had signed a document in June of 2000 purporting to give Lee a 40% interest in the Buckeye Chicken. However, Bryant explained that he never formally transferred the ownership, and the document giving the 40% was used only a "stalling tactic." Bryant stated that Lee asked him to pay back the loan by issuing payroll checks to Lee from Buckeye Chicken, which Bryant did for approximately eight to ten weeks for a total of $418.00 after taxes.

Nicole McCullar, a manager at Buckeye Chicken, testified that she and Bryant were responsible for Buckeye Chicken's day-to-day operations. McCullar stated that she knew Lee was at least part owner, or a "silent partner" in the restaurant. McCullar testified that before the restaurant opened, Lee would run errands for Bryant and helped get the restaurant open. McCullar stated that Lee would occasionally give her money to pay for items such as letterhead, business cards,

computer equipment, and tables. McCullar explained that it "wasn't like [Lee] was working but he would be in the store." McCullar testified that Lee did not direct employees, but if he did, they knew to listen to him because of Lee's connection to Bryant.

McCullar stated that Lee never opened the store in the morning, did not have a key, and did not have an office at Buckeye Chicken. McCullar stated that Lee may have picked up supplies once or twice. McCullar explained that Lee knew some of the vendors and would pay them, but he never placed orders with them. McCullar testified that she had never observed Lee do any work at the store at the time she was cutting paychecks for him.

Wayne Wise testified that shortly after he began working at Buckeye Chicken in December of 2001, he was given the responsibility of opening the store. Wise explained that he would arrive at about 8:30 a.m. and only Keith "Pep" Bryant and McCullar ever opened the store with him. Wise stated he never knew of anyone with a first name of Ryan working at Buckeye Chicken.

Lynn Bostelman of Gordon Food Service ("GFS") also testified at trial. Bostelman explained that GFS is a wholesale food distributor. Bostelman testified that Bryant, McCullar, and a man named Keith were the only people she ever dealt with as representatives of Buckeye Chicken. Bostelman indicated the Buckeye Chicken bought items from GFS every day, and that she had been out to the restaurant several times. Bostelman did not recognize Lee when asked to look around the courtroom and point out any representative of Buckeye Chicken. Bostelman stated that she did not know anyone by the name of Ryan Lee.

At the close of evidence, Lee's counsel made a Rule 29 motion for judgment of acquittal. The district court judge reserved on final decision pursuant to Rule 29(b). After the jury returned its verdict of guilty, Lee's counsel made a Rule

29 motion for acquittal notwithstanding the jury verdict. The court took the motion under advisement. At the sentencing hearing, the district court judge stated that he had considered the arguments of counsel regarding the Rule 29 motion and was denying the motion.

## ANALYSIS

### A.  *Sufficiency of Evidence*

On appeal from a criminal conviction, the question is whether the relevant evidence, direct or circumstantial, viewed in the light most favorable to the government, could be accepted by a reasonable-minded jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. *United States v. Meyers*, 646 F.2d 1142, 1143 (6th Cir. 1981). This inquiry does not require a court to "ask itself whether it believes the evidence at the trial established guilt beyond a reasonable doubt, ... [but] if *any* rational trier of fact could have found the essential elements." *Jackson v. Virginia*, 443 U.S. 307, 312-13 (1979).

In order to obtain a conviction for perjury in violation of 18 U.S.C. § 1623, the government must prove that the defendant: (1) knowingly made (2) a materially false declaration (3) under oath (4) in a proceeding before or ancillary to any court of the United States. *United States v. McKenna*, 327 F.3d 830, 838 (6th Cir. 2003). A statement is material if "it has the natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." *Id*. at 839 (citation omitted); *see also United States v. Sassarelli*, 118 F.3d 495, 499 (6th Cir., 1997). Nor is it required that the government prove that the perjured testimony actually influenced the relevant decision-making body. *McKenna*, 327 F.3d at 839. Further, materiality is tested *at the time the allegedly false statement was made*. *Id*. (emphasis added).

At trial, FBI Agent Creedon testified that during the detention hearing, Lee was placed under oath and took the witness stand to testify on his own behalf about his employment status. Lee testified that he worked at Buckeye Chicken and described his duties at the restaurant. When asked if he went to work every day, or how often he worked, Lee stated that he worked during the week from approximately 6:30 a.m. to about 11:00 a.m. Lee testified that his duties at Buckeye Chicken included meeting with vendors and picking up items from GFS. Lee indicated that he had an office at Buckeye Chicken.

During the trial, Bryant, McCullar, and Wise each testified that Lee did not work at Buckeye Chicken. Bryant and McCullar testified that Lee had no responsibilities in the day-to-day operations at Buckeye Chicken. Wise testified that he never saw Lee at Buckeye Chicken when he was opening the restaurant at 8:30 a.m. Bryant admitted that Lee had been "cut" Buckeye Chicken paychecks, but explained that the checks were only to repay a loan. McCullar testified that she thought of Lee only as a silent partner, and that Lee might have gone to GFS twice. Bostelman testified that Buckeye Chicken made purchases every day at GFS, but she had never seen Lee nor heard his name. Regardless of what Lee believed his role at Buckeye Chicken to be, this testimony directly contradicted his statements that he was at Buckeye Chicken "mostly" during the week, "usually" between the hours of 6:30 and 11:00, and that he was meeting vendors there; and regularly making trips to GFS.

Viewed in the light most favorable to the government, the evidence was clearly sufficient for a rational trier of fact to find that Lee knowingly made false and material declarations under oath during his detention hearing regarding his employment status at Buckeye Chicken. Therefore, there was sufficient evidence presented at trial to sustain the jury's verdict.

**B.    *Motion to Dismiss the Indictment***

A district court's refusal to dismiss an indictment is reviewed for an abuse of discretion. *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir. 1986), *cert. denied*, 484 U.S. 969 (1987); *United States v. Overmeyer,* 899 F.2d 457, 465 (6th Cir. 1990), *cert. denied*, 498 U.S. 939 (1990). In denying Lee's Motion to Dismiss, the district court relied on *United States v. Swift*, 809 F.2d 320 (6th Cir. 1987), and *United States v. Sarihifard,* 155 F.3d 301 (4th Cir. 1998).

In *Swift*, this court held that a false statement's failure to lead the tribunal astray is irrelevant for 18 U.S.C. § 1623 analysis. 809 F.2d at 324. The court stated that "a false declaration satisfies the materiality requirement if a truthful statement might have assisted or influenced the grand jury in its investigation." *Id.* (citing *United States v. Richardson*, 596 F.2d 157, 165 (6th Cir. 1979)); *see also United States v. Lutz*, 154 F.3d 581, 588 (6th Cir.1998) (holding that a statement is "material" if it has the natural tendency to influence or is capable of influencing a decision making process; showing of actual influence unnecessary to prove materiality); *United States v. DeZarn*, 157 F.3d 1042, 1049 (6th Cir.1998) (same).

In *Sarihifard,* it was conceded that the defendant's false statement to a grand jury had no influence on the grand jury's decision because the government later told the grand jury to disregard it because it was false. 155 F.3d at 307. However, the court noted that "[a] false statement's capacity to influence the fact finder must be measured at the point in time that the statement was uttered." *Id.* (citing *United States v. Holley*, 942 F.2d 916, 923 (5th Cir. 1991)). Therefore, the court stated that the fact that the government told the grand jury not to rely on the defendant's testimony was irrelevant. *Id.* The court stated that to hold otherwise would

allow witnesses who lie under oath to escape prosecution if their statements before a grand jury are obviously false. This rationale protects witnesses who fabricate testimony

that a grand jury will recognize instantly as false. An argument for the creation of such an incentive not only misconstrues the scope of materiality, it strains logic.

*Id.*

Lee's statements regarding his employment at Buckeye Chicken were material because that information was capable of influencing the magistrate judge's decision as to whether Lee should remain in custody. Even though Lee's testimony was withdrawn and ultimately stricken, Lee's testimony had the capacity to influence the magistrate judge at the time it was given. A defendant cannot perjure himself and then have his perjurious testimony stricken in order to escape prosecution. As recognized by the district court, to conclude otherwise would lead to absurd results. Therefore, the district court did not abuse its discretion in overruling Lee's Motion to Dismiss the Indictment.

## C.  *Evidentiary ruling*

A district court's evidentiary rulings are reviewed under an abuse of discretion standard. *United States v. Garcia,* 20 F.3d 670, 672 (6th Cir. 1994), *cert. denied,* 513 U.S. 1159 (1995); *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990).

Lee argues that the district court erred in not allowing the jury to hear the portion of the detention hearing transcript where the magistrate judge struck his allegedly perjurious statements from the record. Lee's argument is based on *United States v. Gaudin*, 515 U.S. 506 (1995), wherein the Supreme Court held that the Constitution requires the judge to submit any question of materiality concerning a defendant's false statement to the jury. In *Gaudin,* the trial judge had instructed the jury that "[t]he issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements." *Id.* at 508. The Court held that because the trial

judge had abrogated the jury's ability to make factual determinations on one of the requisite elements of the offense, a constitutional violation had occurred. *Id.* at 523. Lee's reliance on *Gaudin* is misplaced.

Unlike the case in *Gaudin*, the issue of materiality was submitted to the jury during Lee's trial. The jury heard testimony regarding the materiality of Lee's statements at the detention hearing, and then was specifically instructed to determine whether Lee's statements were material. Therefore, the district court did not abrogate the jury's ability to make a determination regarding materiality.

Rather, the district court merely ruled, as a matter of law, that the portion of the transcript wherein the magistrate judge struck Lee's earlier testimony was not relevant and could mislead the jury. Relying on *Sarihifard* and *Swift, supra,* the district court explained that the magistrate judge's statement that he would not consider Lee's testimony was not relevant because the materiality of Lee's testimony should be measured at the time that the statement was uttered.

Based on this reasoning and the authority cited by the district court, it was not an abuse of discretion to exclude evidence showing that Lee's testimony was subsequently stricken by the magistrate judge.

## D.  *Rule 29 motion*

The district court's refusal to grant a motion for judgment of acquittal is a legal question that we review *de novo. United States v. Keeton,* 101 F.3d 48, 52 (6th Cir. 1996) (citing *United States v. Gibson,* 896 F.2d 206, 209 (6th Cir. 1990)). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). "Substantial and competent" circumstantial evidence by itself may support a verdict and need not

"remove every reasonable hypothesis except that of guilt." *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984). The general hesitancy to disturb a jury verdict applies with even greater force when a motion of acquittal has been thoroughly considered and subsequently denied by the trial judge. *United States v. Orrico*, 599 F.2d 113, 116 (6th Cir. 1979).

As stated herein at Section A, a perjury charge pursuant to 18 U.S.C. § 1623 has four elements: (1) knowingly made; (2) a materially false declaration; (3) under oath; (4) in a proceeding before or ancillary to any court of the United States.

After the close of proof, the district court heard arguments regarding Lee's Rule 29 motion. Lee's counsel argued that the evidence indicated a belief on the part of Lee that he was 40% owner of Buckeye Chicken, that he had a stake in the business, and it was a place that he worked. The district judge agreed that some of the evidence could create a belief in Lee's mind that he was part owner, but pointed out that Lee testified specifically that he was "usually there between 6:30 and I'm out of there at about 11:00 when we open." The court explained that this testimony was material because it indicated that Lee would be at a certain place during specific hours during the week and had bearing on his risk of flight. However, there was no evidence that Lee was there during those hours. The court was persuaded by the government's argument that Lee held himself out as an employee at the detention hearing, yet the testimony at trial indicated that Lee did not work at Buckeye Chicken.

Lee argues that the district court erred in overruling his Rule 29 motion, because the government, in proving the element of falsity, improperly interjected its own interpretation regarding Lee's statement that he was employed at Buckeye Chicken. Lee relies on *United States v. Shotts*, 145 F.3d 1289, 1298 (11th Cir. 1998), *cert. denied*, 525 U.S. 1177 (1999), for the proposition that a perjury conviction

must rest on the utterance by the accused; it may not stand on a particular interpretation that the questioner places upon the answer.

In *Shotts*, the Eleventh Circuit reversed the perjury conviction because the defendant's statement was "literally" true, even if it was also "evasive, nonresponsive, intentionally misleading and arguably false." *Id*. at 1299. The court stated that the questioner has the burden of pinning the witness down to the specific object of inquiry. *Id.* at 1298, (citing *Bronston v. United States*, 409 U.S. 352, 360 (1973)). The court explained: "If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *Id.* (quoting *Bronston*, 409 U.S. at 362).

Lee's reliance on *Shotts* is misplaced. Unlike the defendant in *Shotts*, Lee did not give a "literally" true but unresponsive answer. Lee stated where he worked, what his duties were, and what specific times he was at work during the week. The government later investigated Lee's statements concerning Buckeye Chicken, found them to be false, and sought an indictment for perjury. *Shotts* is also distinguishable because Lee testified on direct examination conducted by his own lawyer. When the government attempted to cross-examine Lee about his employment at Buckeye Chicken, Lee abruptly stopped testifying. Therefore, Lee made it impossible for the government to question him and "flush" out his testimony.

The government presented witnesses at trial who testified that Lee's statements were false. None of the evidence supported Lee's statement that he was "usually there between 6:30 and I'm out of there at about 11:00 when we open." Regardless of Lee's ownership interest, or involvement in the operations of Buckeye Chicken, the evidence presented at trial controverted his statement that he was at Buckeye Chicken during those specific times. Considering the evidence in the light most favorable to the government, a

reasonable jury could find that Lee's statements were materially false.

Furthermore, the district court thoroughly considered Lee's Rule 29 motion. The district judge heard the arguments of the parties, reserved the decision on the motion in order to examine the transcript, and then denied Lee's motion at the sentencing. Therefore, "the general hesitancy to disturb a jury verdict applies with even greater force."

For the foregoing reasons, the district court did not err in overruling Lee's Rule 29 motion.

**AFFIRMED.**