**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0080n.06

Case No. 15-3274

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 05, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CHARMIN REEVES, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:  BOGGS and DONALD, Circuit Judges; and HOOD, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge**.  Charmin Reeves appeals her convictions of four counts of aiding and abetting health-care fraud in violation of 18 U.S.C. §§ 1347(a)(1) or (2), and four counts of aiding and abetting aggravated identity theft in violation of  18 U.S.C. § 1028A(a)(1) or (2).  She alleges that the district court erred in denying her motions for acquittal and a new trial.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

On November 29, 2009, Reeves contacted her cousin Kamille Carter and asked if she wanted to make some extra money by filling her prescription for OxyContin. The prescription she provided Carter was written on the stolen prescription pad of Dr. John Bergfeld, a physician employed by Cleveland Clinic Hospital, which happened to be the same hospital where Reeves worked as an operating room scheduler. The forged prescription made out to Carter contained Dr. Bergfeld's forged signature, and his DEA number. Beyond that, the prescription contained contradictory abbreviated medical instructions, such as "PO PRN" and "T.T.I.D," which stands for "by mouth, as necessary" and "take one tablet three times a day," respectively.

Carter attempted to fill the prescription at a Walgreens pharmacy. The pharmacist quickly ascertained that the prescription was likely fraudulent and contacted law enforcement. Carter was arrested. Upon her release, Carter went home and spoke to Reeves. When Carter told Reeves that she had been arrested, Reeves responded, "that that hadn't happened to the person who did it before." After making a phone call, she told Carter "don't worry about it" because it was her first time being arrested. In exchange for a plea deal, Carter ultimately agreed to cooperate with law enforcement.

Law enforcement decided to investigate this incident further. During the investigation, they discovered that not only did Reeves work in such close quarters with Dr. Bergfeld that she had access to his prescription pad, but they also noticed that the forged prescription looked remarkably similar to four other fraudulent prescriptions for OxyContin written on the prescription pad of Dr. Deborah Cook.[1] Specifically, three "Cook prescriptions" contained the same contradictory medical instructions as the "Bergfeld prescription", and each of them also

---

[1] Reeves' insurance policy was used to purchase OxyContin at CVS on the following dates: October 9, 2009, November 8, 2009, December 2, 2009, and January 19, 2010.

prescribed the same strong dosage of OxyContin.  More alarming, however, was the fact that all four of the "Cook prescriptions" were prescribed to Reeves.  Not only were they prescribed to Reeves, whoever picked up the prescriptions also used Reeves' insurance policy to pay for each of them.  The only differences between the prescriptions were that Carter attempted to fill the "Bergfeld prescription" at Walgreens under her own name, and the "Cook prescriptions" were filled at two CVS locations under Reeves' former married name, "Charmin Wray."[2]  In addition, law enforcement also found it peculiar that the same day Carter attempted to fill the "Bergfeld prescription" at Walgreens, CVS refused to refill a prescription because not enough time had elapsed since Reeves' last OxyContin refill.

On April 2, 2013, Reeves was indicted on one count of conspiracy to possess with the intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a) and 846.  On August 23, 2013, Reeves filed a motion to suppress her confession.  Her motion was granted on October 29, 2013.  Reeves asserted that her confession was the primary incriminating evidence supporting the indictment, and moved to dismiss the indictment.  Before the district court could rule on Reeves' motion to dismiss, a federal grand jury issued a nine-count superseding indictment.

On August 11, 2014, Reeves' jury trial began.  The government presented eleven witnesses.  The jury found Reeves guilty on all nine counts.  With respect to counts 2-5 (health-care fraud) and counts 6-9 (aggravated identity theft) she was found guilty as an aider and abettor.  Reeves timely appealed.

On appeal, Reeves does not take issue with her conviction as to count one (conspiracy to possess with intent to distribute oxycodone).  She, however, argues that there was insufficient

---

[2] In 2005, after Reeves' divorce, she changed her name from "Charmin Wray" back to her maiden name, "Charmin Reeves."

evidence to convict her of counts 2-9. Thus, she contends that the district court erred in denying her motions for acquittal and for a new trial.

## II.

"We review *de novo* a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010) (quoting *United States v. Carson*, 560 F.3d 566, 579 (6th Cir.2009)). The relevant inquiry is whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Under this approach, we must not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgement for that of the jury." *Id.* (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Importantly, "[s]ubstantial and competent circumstantial evidence by itself may support a verdict." *Id.* (citing *United States v. Lee*, 359 F.3d 412, 418 (6th Cir.2004)). In this case, since the district court has already thoroughly considered Reeves' motion for acquittal, we must be especially hesitant to disturb the jury verdict. *Id.*

We review for a clear and manifest abuse of discretion, the district court's decision to deny a motion for a new trial. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). A motion for a new trial is typically premised on the argument that the jury's verdict was against the manifest weight of the evidence. *Id.* When considering a motion for a new trial, district judges "may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.* at 593 (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). "The role of the court of appeals, however, is not to sit as a 'thirteenth juror' and re-weigh the evidence, but to examine the evidence to determine whether the district court's ruling that the verdict is not

against the manifest weight of the evidence was "a clear and manifest abuse of discretion." *Lutz*, 154 F.3d at 589-90 (citing *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir.1988)).

III.

A.

To obtain a conviction for health-care fraud under 18 U.S.C. § 1347, the government must prove that a defendant: "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008) (quoting *United States v. Raithatha*, 385 F.3d 1013, 1021 (6th Cir.2004)).

Reeves, however, was convicted as an aider and abettor. Aiding and abetting requires: (1) an act by a defendant which contributes to the execution of a crime, and (2) the intent to aid its commission. *Id.* Therefore, regardless of whether Reeves was actually the person who devised the fraudulent scheme, her convictions must be affirmed if the evidence is sufficient to support a finding that she contributed to the execution of the scheme with the intent to defraud. *Id.*

B.

On appeal, Reeves contends that the district court erred in denying both her motion for acquittal and motion for a new trial, arguing that the evidence was insufficient to support her convictions. For the reasons detailed below, we disagree.

To support her contention that the evidence was insufficient to convict her of aiding and abetting health-care fraud, Reeves makes two flawed arguments. First, she takes issue with the fact that no *direct* evidence was presented that showed that she knew that her insurance policy

was being used in the fraudulent scheme. Second, she argues that any inferences the jury made from the evidence were unreasonable. In arguing that the jury's inferences were unreasonable she attempts to "offer a new spin" on the evidence.

Contrary to Reeves' assertions, more than enough circumstantial evidence was presented to allow a reasonable fact finder to conclude that she aided and abetted health-care fraud. As stated above, we must view all the evidence in the light most favorable to the government. *See Fisher*, 648 F.3d at 450. It cannot be forgotten that Reeves does not appeal her conviction for conspiracy to possess with intent to distribute oxycodone. Nor does she attempt to "explain away" the evidence that was used to convict her of that charge. That evidence, however, also supports her four health-care fraud convictions.

The fact that she intentionally recruited her cousin, Carter, to purchase OxyContin with a forged prescription, albeit from Dr. Bergfeld's prescription pad, is telling for the following reasons. First, the "Bergfeld prescription" contained contradictory medical instructions identical to three of the four prescriptions that accounted for each count of her health care fraud conviction—the "Cook prescriptions." Second, when Carter confronted Reeves after her arrest, Reeves said, "that that hadn't happened to the person who did it before." (Page ID # 678.) Third, two of the "Cook prescriptions" were purchased prior to Carter's arrest. Fourth, the same day that Reeves sent Carter to Walgreens with the "Bergfeld prescription," CVS refused to refill an OxyContin prescription using Reeves' policy because not enough time had elapsed since the last refill.

In addition to the foregoing incriminating evidence, the government also provided a CVS pharmacist, Bradley Janko, who testified that in order for an individual to purchase prescriptions using an insured's policy, that person would have to provide the insured's insurance card or the

insured's (1) name, (2) date of birth, (3) address, (4) phone number, and (5) insurance information. (Page ID # 822-23.) The government also put on Jeffrey Schmitt, the person responsible for managing the prescription-drug benefits for the Cleveland Clinic Employee Health Plan. He testified that Reeves likely *would* have received notice that someone was using her insurance policy after CVS refused to fill the fraudulent "Cook prescription" on November 29, 2009.

Viewed collectively, in the light most favorable to the government, the foregoing evidence would have provided a jury with all that it needed to reasonably conclude that not only was Reeves behind the "Bergfeld prescription," but that she also furnished other individuals with either her insurance card or the requisite information needed to use her policy for the purpose of fraudulently purchasing OxyContin. The fact that she neglected to take corrective action upon learning about the fraudulent scheme also provided a reasonable basis to disbelieve her claim that she was ignorant to the fraud being perpetrated using her policy.

Reeves disagrees. To support her argument, Reeves points to the fact that the prosecution did not provide any direct evidence showing that (1) she knew Dr. Cook or had access to her prescription pad, (2) she actually received any notice that her policy was being used to pay for the prescriptions, (3) she recruited someone else to use her policy to purchase the "Cook prescriptions," or that (4) the handwriting on the prescriptions was hers. She also contends that since the "Cook prescriptions" were issued under the name of "Charmin Wray" as opposed to "Charmin Reeves" no reasonable jury could have convicted her. It cannot be argued that the points Reeves makes on appeal support her claim of innocence. However, in deciding that she was guilty, the jury already considered those points and rejected them. Consequently, if we were to overturn the jury's verdict based on her arguments, we would have to ignore the reasonable

inferences made by the jury in reaching its verdict, something that we cannot do. Accordingly, because there was sufficient evidence to support the jury's verdict, we hold that the district court did not err or abuse its discretion in denying Reeves' motion for a new trial or her motion for acquittal.

IV.

A.

In order to secure a conviction for aggravated identity theft the government would have to show that a defendant, during a requisite felony, knowingly transferred, possessed, or used, without lawful authority, a "means of identification" of another person. 18 U.S.C. § 1028A(a)(1). A "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). Another person's name in the form of a fraudulent signature satisfies the "means of identification" requirement. *See United States v. Williams*, 553 F. App'x 516, 518 (6th Cir. 2014). Like the health-care conspiracy convictions, Reeves was convicted as an aider and abettor. Thus, the government was required to prove that Reeves (1) performed an overt act which contributed to the execution of the identity theft; and (2) had the intent to aid its commission. *Hunt*, 521 F.3d at 645.

B.

Like her health-care conspiracy convictions, Reeves argues that the district court erred in denying both her motion for acquittal and motion for a new trial, arguing that the evidence was insufficient to support a conviction. We disagree.

The evidence the jury relied upon to convict Reeves of aiding and abetting health-care fraud also supports her aggravated identity theft convictions. Since we previously analyzed that

evidence and explained why it was sufficient to support Reeves' convictions for health-care fraud, we will not belabor the point and repeat ourselves. Suffice it to say that enough evidence was put on by the government to allow a reasonable jury to conclude that Reeves aided and abetted the commission of aggravated identity theft by supplying either her insurance card or personal information to an individual for the purpose that he or she would use it in attempting to fraudulently secure OxyContin by signing Dr. Cook's signature on one of her prescription sheets. Accordingly, we hold that the district court did not err or abuse its discretion in denying Reeves' motion for a new trial and her motion for acquittal with respect to her aggravated identity theft convictions.

V.

For these reasons, we **AFFIRM** the judgment of the district court.